UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ESTATE OF RICHARD CANADA, by Personal Representative, BOBBY JEAN SMITH, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. 2:21-CV-257-PPS-JEM |
| STATE OF INDIANA, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

If one believes the complaint, this case involves a shocking and violent incident that took place at Westville Correctional Facility, resulting in the death of an inmate, Richard Canada. On June 5, 2021, in response to reports that Canada was intoxicated, three correctional officers at the prison allegedly removed Canada from his bed, threw him into a wall, handcuffed him, and then proceeded to push him down a staircase, causing him to sustain serious physical injuries to which he succumbed days later. His estate brings constitutional claims of excessive force and failure to protect against the State of Indiana, the Warden and Lieutenant who supervised prison employees, and the three correctional officers who allegedly caused Canada's injuries.

Defendants have moved to dismiss the complaint [DE 39], asserting that the Estate's claims must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that I lack subject matter jurisdiction over the claims against the State of Indiana because of Eleventh Amendment immunity. The

same is true for the official capacity claims against the Warden, Lieutenant, and correctional officers. Defendants further contend that the balance of claims against the Warden, Lieutenant, and the correctional officers in their individual capacities must be dismissed pursuant to Federal Rule 12(b)(6).

In summary, Plaintiff will be permitted to proceed with the individual capacity claims against the three correctional officers who are alleged to have violently and unprovokedly caused Canada's death, but the claims against the Warden and Lieutenant will be dismissed for failure to state a claim. Finally, Plaintiff has also asked the Court to dismiss without prejudice "any state law claims," and dismiss with prejudice a conspiracy claim brought under 42 U.S.C. § 1985(3). [DE 43 at 21.] Those claims will also be dismissed.

**Facts**

The facts are drawn from Plaintiff's Second Amended Complaint and accepted as true at this stage of the proceedings. [DE 26.] In June 2021, Richard Canada was confined at Westville Correctional Facility which is operated by the Indiana Department of Correction. *Id.*, ¶¶ 4, 10. Under Indiana law, the Warden at Westville, John Galipeau, is charged with taking care of prisoners and setting policy for the facility that ensures its effective management and administration. *Id.*, ¶ 5. Lieutenant and unit supervisor Larry Crittendon, as well as several correctional officers, including Khalid Yacoub, Mathew Kozuszek, and Chipquita Snowden, worked under the supervision of Warden Galipeau. *Id.*, ¶¶ 6–9.

Plaintiff claims that Westville is a place where prisoners have historically been subjected to "cruel and unusual punishments," including the use of excessive physical force by prison employees and other practices creating an unreasonable risk of harm, such as insufficient staffing and screening of prison employees, inadequate training, inadequate records-keeping practices, and lack of a quality improvement system to monitor for and correct the use of excessive force. *Id.*, ¶¶ 11–12. The complaint does not identify any such incidents, either involving other prisoners or Canada, aside from the events of June 5. That said, according to the complaint, due to the prison's supposedly problematic track record, the State of Indiana and Warden Galipeau should have known that they needed to develop and implement policies, procedures, and practices to prevent the use of excessive force by correctional officers. [*See* DE 26, ¶ 13.] While incarcerated at Westville, Canada allegedly required protection and supervision against the use of excessive force by prison employees; but nobody offered him any protection or supervised the correctional officers with whom he interacted on June 5, 2021. *Id.*, ¶¶ 15–16.

Here's what is alleged to have happened on the day of the incident: Snowden witnessed Canada being helped to bed by another inmate and reported to other officers that Canada was intoxicated. *Id.*, ¶ 17. Three officers (Snowden, Yacoub, and Kozuszek) then removed Canada from the bed and decided to "teach him a lesson through the use of physical violence." *Id.*, ¶ 18. Yacoub and Kozuszek threw Canada into a wall and handcuffed him. *Id.*, ¶ 20. Then, "Yacoub and/or Kozuszek" pushed Canada—still

handcuffed—down a flight of stairs, or otherwise failed to intervene to protect him from falling down the stairs. *Id.*, ¶ 21. Even more disturbing, the three officers allegedly "ensured that Mr. Canada was taken to an area outside the view of video cameras," in an attempt to cover up what they were doing. [DE 26, ¶ 22.]

Canada sustained serious injuries as a result of this violent incident and passed away four days later. *Id.*, ¶ 30. An investigation ensued. It uncovered conflicting statements from the officers concerning how Canada was removed from his bed, handcuffed, and supposedly "fell down the stairs." *Id.*, ¶ 24. Yacoub sat for a polygraph examination. When asked whether he physically caused Canada to fall down the stairs, he stated that he did not. However, the examination indicated that Yacoub's answer was "deceptive." *Id.*, ¶¶ 26–28. Yacoub conceded that he witnessed Kozuszek's arm "extend out," but did not know whether the motion "was to grab or push" Canada. *Id.*, ¶ 29.

Based on the foregoing facts, Plaintiff asserts five separate "causes of action" against different sets of defendants. *Id.* at 7–8. The contours of each claim are imprecise and difficult to distinguish. Despite the kitchen-sink approach taken in the operative complaint, my job is made somewhat easier by the fact that, as prefaced, Plaintiff has conceded certain of the claims are non-starters. Plaintiff concedes that the claims against the State of Indiana and the official capacity claims against the prison officials must be dismissed for lack of jurisdiction. Plaintiff has also asked the Court to dismiss without prejudice "any state law claims," and to dismiss with prejudice a conspiracy claim brought under 42 U.S.C. § 1985(3). [DE 43 at 8–9, 21.] What remains are a hodge-podge

of claims brought against the Warden and Lieutenant in charge (Galipeau and Crittendon), and individual capacity claims against the three correctional officers who were on scene when the assault took place — Yacoub, Kozuszek, and Snowden.

## Discussion

"Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *see* Fed. R. Civ. P. 12(b)(1); *Estate of Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1073 (S.D. Ind. 2011). In assessing a motion to dismiss under Rule 12(b)(1), I must "accept[] the allegations in the plaintiff's complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Pena v. Indianapolis Pub. Sch. Corp.*, No. 118CV03857JMSDML, 2019 WL 2451652, at *3 (S.D. Ind. June 12, 2019) (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). To avoid dismissal under the rule, the plaintiff must prove by a preponderance of the evidence that subject-matter jurisdiction is intact. *Id.* (citing *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003)).

Additionally, under Federal Rule of Civil Procedure 8(a), a complaint is required to contain "a short and plain statement showing that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss brought under Rule 12(b)(6), I must accept the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir.

2021). However, to avoid dismissal under Rule 12(b)(6), a claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Facial plausibility, in turn, requires a plaintiff to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has explained that a plaintiff must plead facts that "suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (the plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law")."[S]heer speculation, bald assertions, and unsupported conclusory statements" in the complaint fail to meet this burden. *Taha*, 947 F.3d at 469.

At the outset, Plaintiff's claims against the State of Indiana and the individual defendants in their official capacities all face the same problem: they are barred by the doctrine of sovereign immunity. Following its ratification in 1795, the Eleventh Amendment effectively overruled a decision of the Supreme Court, *Chisholm v. Georgia*, 2 U.S. 419 (1793). *Chisholm* had held that a South Carolina citizen could sue the State of Georgia for money damages. That decision caused concern among the states. For

decades prior to ratification of the Constitution, states had enjoyed a robust conception of their sovereignty (a fancy word for the authority to govern oneself). States figured that the new Constitution had retained traditional notions of state sovereignty they had enjoyed immediately following the nation's founding — like immunity from suits by citizens for money damages. The Supreme Court in *Chisholm* cast that aside, noting that the original jurisdiction conferred to federal courts under the Constitution was not so limited. Thereafter, states sought and obtained codification of the Eleventh Amendment.

The language of the Eleventh Amendment prohibits suits against a state when they are brought "by Citizens of another State[.]" By its plain terms, the Eleventh Amendment does not apply to suits brought by citizens of one state against their own state. But for murky reasons largely based in history rather than the actual text of the Amendment, it has been interpreted to apply to *all* suits against states — even those brought by citizens of the same state. It's been that way since the Supreme Court so held back in 1890, despite the plain language to the contrary. *Hans v. Louisiana*, 134 U.S. 1 (1890).

There are a number of exceptions to Eleventh Amendment immunity: it doesn't apply to (1) suits directly against a state based on a cause of action for which Congress has abrogated the state's immunity from suit; (2) suits directly against a state if the state consented to be sued and therefore waived its sovereign immunity; and (3) suits against a state official seeking prospective equitable relief for ongoing violations of federal law. *MCI Telecommc'ns Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999). None

of these exceptions apply in this case. Thus, as Plaintiff concedes, the claims asserted against the State of Indiana must be dismissed for lack of jurisdiction.

Plaintiff's claims against Galipeau, Crittendon, Yacoub, Kozuszek, and Snowden in their official capacities must also be dismissed, for substantially the same reasons. Because a state official sued in his official capacity for money damages is not a "person" within the meaning of § 1983, the official capacity claims against these defendants are really nothing more than suits against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165, 167 (1985). Therefore, such claims are likewise barred by the Eleventh Amendment. *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000); *see Meadows v. State of Indiana*, 854 F.2d 1068, 1069 (7th Cir. 1988); *Lundeen v. Rhoad*, 991 F. Supp. 2d 1008, 1016–17 (S.D. Ind. 2014). While Plaintiff may bring suit against state officials in their official capacity for injunctive relief, *see Lundeen*, 991 F. Supp. 2d at 1017, here, there is no request for relief that can be "properly characterized as prospective," *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1051 (7th Cir. 2013), because the complaint seeks only monetary damages. Accordingly, all of the "official capacity" claims must be dismissed for lack of jurisdiction.

What about the claims asserted against Galipeau and Crittendon in their individual capacities? Recall that they are the Warden and the Lieutenant, neither of whom were present during the assault but had supervisory responsibility over the three correctional officers who were present. In this part of the complaint, Plaintiff is claiming that the policies, customs, and practices at Westville, including inadequate training,

8

caused the violation of Canada's constitutional rights. In particular, Plaintiff claims that the State of Indiana, Galipeau, and Crittendon (1) failed to "appropriately train their staff" concerning excessive force; (2) failed to "develop and implement policies, procedures, and practices to address and prevent injury due to excessive force by correctional guards" at Westville; (3) "permitted/adopted a widespread policy of failing to provide adequate monitoring and prevention of injury/death to prisoners," resulting in violation of Canada's rights; (4) that Galipeau and Crittendon were the final policy makers on the policies, procedures, and practices used at Westville concerning the use of force; and (5) that Galipeau and Crittendon were the final policy makers at Westville "that allowed for an official policy, unofficial custom and/or [were] deliberately indifferent in the need to train, screen, and/or supervise/monitoring of Westville correctional officers on their use of force against inmates," in violation of Canada's rights under the Eight and Fourteenth Amendments. [DE 26, ¶¶ 34–38.]

All of these allegations sound like Plaintiff is attempting to assert a *Monell* claim, whereby municipalities may be held liable under § 1983 if their official policies, practices and unwritten customs, cause constitutional violations. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690–91 (1978). But *Monell* liability is limited to claims against municipalities. And Westville is plainly an arm of the State of Indiana. So any claim based on a *Monell* theory, in a case like this, has to be dismissed.

Plaintiffs also claim that Galipeau and Crittendon are liable individually because they were deliberately indifferent to Canada's rights to be free from excessive force

under the Eighth and Fourteenth Amendments. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners, including the use of excessive force. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). It also imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Failure to provide adequate protection to an inmate can form a constitutional violation, but the plaintiff must establish that "the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). There is a high bar to meet:

> To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008).

In opposing dismissal of the deliberate indifference claim, Plaintiff relies in large part on two non-binding decisions, in which courts respectively evaluated deliberate indifference claims against prison supervisors at summary judgment and after a bench trial. [DE 43 at 9–18 (citing *Valdes v. Crosby*, 450 F.3d 1231 (11th Cir. 2006); *Musgrove v. Broglin*, 651 F. Supp. 769 (N.D. Ind. 1986).] These arguments analogizing to *Valdes* and *Musgrove* provide a lot of detail about the facts the courts relied upon in assessing the merits of the claims brought in those cases, but they fail to reference any *specific*

10

allegations against Galipeau and Crittendon in the operative complaint. [DE 43 at 14, 17–18.] Instead, Plaintiff reiterates general allegations about Galipeau and Crittendon acting "carelessly, negligently, with gross negligence, and/or with deliberate indifference" in promulgating policies and training correctional officers on the use of excessive force, and that "excessive use of physical force against prisoners . . . created an unreasonable risk of harm" due to various deficiencies in these policies and training. *See id.* at 18. Of course, the real question is whether the facts presented between the four corners of Plaintiff's complaint satisfy the applicable standard — not whether, somewhere down the line, Plaintiff could discover more facts about the Warden's and Lieutenant's actions to obtain judgment on a theory of deliberate indifference.

There are certainly well pleaded facts to suggest that Canada was gruesomely assaulted by three subordinate correctional officers at the prison; but there are no facts that suggest that either Galipeau or Crittendon had anything to do with it, other than holding supervisory roles at Westville. As previously explained, a defendant's supervisory capacity, standing alone, "is not a viable basis for imposing liability under 42 U.S.C. § 1983." *See McCants v. Calloway*, No. 3:21-CV-116 DRL-MGG, 2021 WL 3911074, at *2 (N.D. Ind. Sept. 1, 2021) (citing *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2018)). More to the point, the facts in the complaint do not provide sufficient detail to plausibly spell out how Galipeau and Crittendon were subjectively aware that Canada was at risk of being attacked by three correctional officers and thrown down a staircase, let alone that they knew about the conduct and facilitated it, approved it,

11

condoned it, or turned a blind eye. *McCants*, 2021 WL 3911074, at *2 (citing *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019)). Accordingly, as presently pled, I am unable to conclude that Galipeau and Crittendon were deliberately indifferent to the risk presented in this case, and the claims against them must therefore be dismissed pursuant to Federal Rule 12(b)(6). But the dismissal will be without prejudice to afford the Plaintiffs an opportunity to develop facts through discovery that would enable them to satisfy the deliberate indifference standard.

Shifting gears to the § 1983 claims asserted against Yacoub, Kozuszek, and Snowden individually [DE 26, ¶¶ 32–33], I am persuaded that Plaintiff has adequately stated a claim for violation of Canada's Eighth Amendment right to be free from excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quotation marks and citations omitted). Several factors guide the inquiry of whether a defendant's use of excessive force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* According to Plaintiff, Yacoub, Kozuszek, and Snowden went to his cell based on the suspicion that he was intoxicated, removed him from the bed, threw him against a wall and handcuffed him, and then threw him down a flight of stairs, causing physical injuries from which he later died. Therefore, the complaint states plausible Eighth and Fourteenth Amendment claims of excessive force against

Yacoub, Kozuszek, and Snowden individually.

Finally, Plaintiff has also asked the Court to dismiss without prejudice "any state law claims," and dismiss with prejudice a conspiracy claim brought under 42 U.S.C. § 1985(3). [DE 43 at 8–9, 21.] It's not immediately clear that the complaint contains any claims under state law, but to the extent it does, these claims will be dismissed. The same goes for the claim under § 1985(3).

For the foregoing reasons, Defendants' Motion to Dismiss [DE 39] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

(1) Plaintiff's claims against the State of Indiana, and against Galipeau, Crittendon, Yacoub, Kozuszek, and Snowden in their official capacities, are **DISMISSED WITH PREJUDICE**, pursuant to Fed. R. Civ. P. 12(b)(1).

(2) Plaintiff's claims against Galipeau and Crittendon in their individual capacities are **DISMISSED WITHOUT PREJUDICE**, pursuant to Fed. R. Civ. P. 12(b)(6).

(3) Plaintiff's claims arising under state law are **DISMISSED WITHOUT PREJUDICE**.

(4) In all other respects, Defendants' motion [DE 39] is **DENIED**. Plaintiff may proceed with Eighth Amendment claims of excessive force against Yacoub, Kozuszek, and Snowden individually.

**SO ORDERED.**

ENTERED: January 3, 2023.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT